SAMUEL ATWATER vs. CHARLES PERKINS.

A will gave the executor "full power, according to the best of his judgment, to sell any of the estate, real or personal, at such times, on such terms, and in such manner as he shall deem expedient, and to re-invest the proceeds or apply them to the payment of debts." Held that the

power conferred on the executor was a naked power to sell, without an interest.

And the power being a mere naked one to sell, the executor had no power, in selling one piece of land to grant a right to carry a drain through other land of the estate.

[Argued June 6th—decided July 27th, 1883.]

ACTION for damages for a breach of covenant in a deed against incumbrances; brought to the City Court of the city of Waterbury and, by appeal of the defendant, to the Superior Court. The case was tried to the court and the following facts found.

On the first day of April, 1875, the defendant conveyed to the plaintiff by deed of warranty in the usual form, the premises described in the complaint.

Upon these premises there was an underground sewer, which John J. Jacques, the owner of adjoining premises, claimed the right to maintain, which was well known to the plaintiff at the time of said purchase, and there was no agreement between the parties that the defendant should extinguish the right other than what may be inferred from the deed. Thirty feet of the rear of the premises described in the complaint belonged to J. M. L. Scovill, also the premises now owned by said Jacques, and the adjoining property known as the Scovill House property, at the time of his death, which occurred in 1857.

The said Scovill at his death left an estate inventoried at $287,500, of which $68,000 was real estate; and was indebted to the amount of about $110,000. The personal property consisted largely of manufacturing and other stocks, bonds and mortgages. He left a will, the part of which important to the present case is as follows:—

"*First.*—I hereby constitute and appoint John Buckingham of said Waterbury, to be sole executor of this my last will, directing my said executor to pay all my just debts and funeral expenses out of my estate. And I hereby give full power and authority to my said executor, according to the best of his judgment for the benefit of my estate, at any time during the settlement of my estate to sell or to

Atwater v. Perkins.

exchange for other property any part of my estate, real, personal or mixed, at such time or times, upon such terms, and in such manner as he shall deem expedient, and to re-invest the proceeds of any such sale in other property, or to apply the same to the payment of my debts, as he shall deem expedient; and to sell or to exchange for other property any part of the property, real, personal or mixed, which I hold as surviving partner of my brother William H. Scovill, and to settle any and all the concerns of the partnership by sale or exchange of the said property and by compromise of claims and accounts, as in his judgment shall be most for the benefit of my estate.   *   *

"*Second*.—My will is that all my estate, real, personal and mixed, shall be distributed and set out to those same persons who would by law be entitled to receive the same if I died intestate, and that they have and hold the same in the same manner and as of the same estate (subject to the powers, authority and duty heretofore given and assigned to my executor), as they would by law be entitled to have and to hold the same if I died intestate."

On the 12th of March, 1862, the executor, during the settlement of the estate, conveyed the premises now owned by Jacques, to one Rockwell. The conveyance was by a warranty deed, in which Buckingham conveyed as executor of Scovill and by virtue of power given him by the will. The deed, after describing the property conveyed, contained the following provision with regard to a sewer:—" Also the right to construct and maintain an underground sewer from the southwest corner of said granted lot, through the land belonging to said Scovill's estate by the nearest straight line to and into the sewer which leads from the Scovill House to Exchange Place; provided that said sewer so to be constructed and maintained by the said Rockwell shall be always subject to such alteration and use as a sewer by the present and future owners of said Scovill's estate contiguous thereto at their expense, as shall not interfere with the suitable and convenient drainage of the premises above granted."

On the 14th of January, 1868, Rockwell conveyed the premises to Jacques, the present owner, by warranty deed in the usual form, but did not mention therein the sewer. At the time of this conveyance Rockwell made no use of the sewer for any purpose, other than to conduct the rain water from the buildings on the premises. Said premises adjoined the public highway and fronted thereon.

The premises across which Buckingham undertook to grant to Rockwell the right to maintain the sewer, (being the premises described in the plaintiff's complaint and which the defendant conveyed to the plaintiff,) were, after the settlement of Scovill's estate, distributed to his heirs, and by their guardian subsequently conveyed to Perkins, the defendant. No mention of the sewer was made in any of the conveyances. In 1870 Perkins altered the course of the Jacques sewer with the consent of Jacques, and laid the same along the north line of Perkins's lot, and its course has remained in this new line ever since. It still runs across the land through which it formerly ran, only in a different direction.

The Scovill House was finished in 1849, and the sewer mentioned in Buckingham's deed to Rockwell as the "Scovill House sewer," was built from three to five years afterwards, and leads from the Scovill House, in an easterly direction, to the sewer in the highway known as Exchange Place.

The court reserved the questions of law arising on the facts for the advice of this court, assessing the damages, if the court should consider the plaintiff entitled to recover, at $2,500.

*J. O'Neill* and *T. Donohue*, for the plaintiff.

A mere direction in a will to executors to sell land, without any words vesting in them an interest in the land, or creating a trust, will be only a naked power. In such a case there is no one who has a right to enforce an execution of the power. But when anything is directed to be done in which third persons are interested, and who have a right

to call on the executors to execute the power, such power survives. It is the possession of the legal estate, or a right in the subject over which the power is to be exercised, that makes the interest in question. When an executor, guardian, or other trustee, is invested with the rents and profits of land, for the sale or use of another, it is an authority coupled with an interest. 1 Caines's Cas., 16. Powers are construed liberally in furtherance of the purposes for which they were created. *Wilson* v. *Troup*, 7 Johns. Ch., 25; *S. C.*, 2 Cowen, 195; *Ward* v. *Amory*, 1 Curtis, 419. In construing a power the intention of the parties is to govern if compatible with law; but in general that intention is to be gathered from the instrument itself, though a reference may be had to the circumstances under which it was given. *Heirs of Capal* v. *M'Millan*, 8 Porter, 197; *Styer* v. *Freas*, 15 Penn. St., 339; *Proctor* v. *Heyer*, 122 Mass., 525. When it becomes necessary that the title should be vested in a trustee to enable him to execute the declared purposes of the will, he will be considered as taking the legal title. *Sandford* v. *Irby*, 3 Barn. & Ad., 654; *Player* v. *Nichols*, 1 Barn. & Cress., 336; *Houston* v. *Hughes*, 6 id., 403; *Hampton* v. *Shotter*, 8 Ad. & E., 905. Although a will may not contain any express words of grant to executors, or any technical words of limitation to them, yet, by implication, a fee will vest in them, if upon view of the whole will, such a fee be indispensable for effectuating the object of the testator. When a will creates trusts, which require for their effectual execution an estate in fee, such estate will be implied. *Deering* v. *Adams*, 37 Maine, 264. An executor who is empowered by the will to sell the real estate of the testator, and distribute the proceeds thereof to legatees, is thereby invested with the title to such estate by necessary implication. *Richardson* v. *Woodbury*, 43 Maine, 206; *Brewster* v. *Striker*, 2 Comst., 19; *Leggett* v. *Perkins*, id., 297. The language of this will is that the executor is to pay the testator's debts out of his estate. We think this plainly gives to the executor the fee, otherwise it would be impossible for him to execute the declared purposes of the

trust.  He is not only executor but trustee.  A direction to
executors to sell so much of the real estate as they think
proper, to pay debts and distribute amongst the testator's
children, may be exercised by a surviving executor; and it
is not necessary that they should previously make probate
or take out letters testamentary, for his authority is not
derived from the registrar.  This is in the nature of a trust.
*Miller* v. *Meetch*, 8 Penn. St., 417.  Where a party has
a power to appoint a fee, if there are no words of positive
restriction, a less estate may be appointed. *Butler* v. *Huestis*,
68 Ill., 594; Sugden on Powers, 535, sec. 40; 2 Washb. R.
Prop., 328, sec. 5; 2 Cruise Dig., 547.  A power to sell in-
cludes a power to mortgage. *Penn. Life Ins. Co.* v. *Austin*,
42 Penn. St., 257; *Williams* v. *Woodard*, 2 Wend., 492;
*Wayne* v. *Middleton*, 2 Geo., 383; *Walton* v. *James*, 15
Louis. An., 386; *Mills* v. *Banks*, 3 P. Wms., 1; *Ball* v.
*Harris*, 4 Myl. & Cr., 264; *Allen* v. *Backhouse*, 2 Ves. &
B., 65.  Executors, acting under a power or trust conferred
by will to sell real estate, may lawfully dedicate to public
use that portion of it within the lines of a proposed street,
as incidental to its sale in lots or otherwise on each side of
the street. *In re Sixty-seventh Street*, 60 How. Pr. 264.
Presumably Buckingham received more from Rockwell on
account of this right to drain.  The ancient doctrine is,
that a devise of land to executors to sell, passes an estate
in fee, while a devise that executors shall sell, or even a
devise of the land to be sold by executors, merely gives the
executors a power without an interest.  This distinction,
however, has been denied by Mr. Hargrave, who is of the
opinion that either of the two last named expressions will
pass an estate in fee.  Hilliard on Real Prop., 559, sec. 16.
In the American cases there seems to be less confusion and
nicety on this point, and the courts have generally applied
to the construction of such powers, the great and leading
principle which applies to the construction of other parts of
the will, to ascertain and carry into execution the intention
of the testator. *Peter* v. *Beverly*, 10 Peters, 532; *Chandler*
v. *Rider*, 102 Mass., 268.  In Ohio a power to executors to

sell land when they may think it advantageous, and to distribute the proceeds, is a power with an interest. *Dabney* v. *Manning*, 3 Ohio, 321. In *Marx* v. *McGlynn*, 88 N. York, 375, the court say it is true that there is no direct or express devise of the real estate to the executors in trust, but such a devise must be implied, and in analogous cases has been frequently implied. The executor is to receive the income of the estate. He is to pay the necessary expenses of the estate and pay over the income, and hence it must be implied that the testator intended he should take the title of the estate in order that he could manage and control the same and carry out the trust intended. When a power has expired without being executed the estate passes as if there was no power. Hilliard on Real Prop., 561, sec. 23. If a power is given to sell and invest, the grantee takes the land as a donee of a power. *Bolton* v. *Jacks*, 6 Rob. (N. Y.), 166. Hence this executor might sell the dominant estate to one and the servient estate to another. There are no restrictive words in the will. The language is "may sell any part of my estate in such manner as he shall deem expedient, according to the best of his judgment, for the benefit of my estate."

*G. E. Terry*, for the defendant.

In discussing the rights of Buckingham, the executor, under the power granted in the will, it is important to ascertain whether it is a mere naked power or a power coupled with an interest. The authorities all agree that a power coupled with an interest is one where the person who is vested with the power acquires some interest in the subject matter of the power. In *Mansfield* v. *Mansfield*, 6 Conn., 559, this definition is given, — "that the person clothed with the power must derive a present or future interest in the subject itself." In *Hunt* v. *Rousmanier*, 8 Wheat., 174, (referred to in the case last cited), MARSHALL, C. J., says, "A power coupled with an interest, is an interest in the subject on which the power is to be exercised." See also *Coney* v. *Sanders*, 28 Geo., 511; *Jackson* v. *Schauber*, 7

Cowen, 186 ; *Bergen* v. *Bennett*, 1 Caines Cas., 15. Buckingham had no interest in the estate, the subject matter of the power granted. The estate was not devised *to him* with power to sell. He was not even directed to sell to raise money for the payment of debts. There was in fact no necessity for selling real estate for the payment of debts, as the personalty largely exceeded the indebtedness. He had no interest in the proceeds to be derived from any such sale. The testator did not intend to grant any interest in the estate to the executor. He only gave him power to sell, exercising his discretion, but only "*for the benefit of my estate.*" As further showing the intention of the testator, he conferred the same powers on any stranger who should be appointed by the court of probate in case he failed to act. All his estate was devised to those persons who would have inherited had there been no will, and on his decease the title as well as the possession of the real estate vested in the heirs, subject to be defeated only by the exercise of the power of sale by the executor. We contend that this was a mere naked power, and as such could be exercised only in strict conformity with the instrument creating the power. In *Bull* v. *Bull*, 3 Day, 384, under a power " *to* sell and dispose of any and every part of the estate in such way and manner as they may think most beneficial for the legatees," it was held to be a mere naked power. In *Gregg* v. *Currier*, 36 N. Hamp., 200, it was held that "a devise of land to be sold by the executor, without words giving him the estate, only invests him with power of sale." See also *Dexter* v. *Sullivan*, 34 N. Hamp., 478. In *Snowhill* v. *Snowhill*, 3 Zabr., 447, it was held that "a mere direction to execu-" tors to sell land is a naked power, and gives them no estate " or interest in the land whatever." See also 1 Sugden on Powers, chap. 3, §§ 33 to 40 ; *Sharpsteen* v. *Tillou*, 3 Cowen, 651 ; *Jackson* v. *Schauber*, 7 id., 186 ; *Waldron* v. *McComb*, 1 Hill, 111 ; *Catton* v. *Taylor*, 42 Barb., 581. The executor had no power to enter upon the land of the heirs for any purpose other than to sell. *Bull* v. *Bull*, 3 Day, 384 ; *Seymour* v. *Bull*, id., 388 ; *Ferry* v. *Laible*, 31 N. Jer. Eq., 566,

note and cases there cited; *Albany Fire Ins. Co.* v. *Bay*, 4 N. York, 9; *Bloomer* v. *Waldron*, 3 Hill, 361. There was no trust created under this will, nor had any one the right to insist that the executor should exercise the power of sale granted. We claim, therefore, that the power granted was a mere naked power, and could only be exercised strictly, and any deviation from an actual sale of the premises in fee simple was not a compliance with the power granted. The executor undertook to create an easement in favor of Rockwell in lands which had vested in the heir, and of which he was entitled to possession. It is not enough to say that he made a more advantageous sale by reason of the supposed easement — nor do we know that he did; so indeed he might by granting a life estate or a perpetual lease or any other estate less than a fee simple, whereby the value of the premises would be diminished in the hands of the heir. In this case the land upon which this supposed easement was created was distributed to the heir, and no allowance was made to him by reason thereof.

PARK, C. J. This case grows out of the first clause of the will of J. M. L. Scovill, which is as follows: " I hereby constitute and appoint John Buckingham of said Waterbury to be sole executor of this my last will, directing my executor to pay all my just debts and funeral expenses out of my estate; and I hereby give full power and authority to my executor, according to the best of his judgment, for the benefit of my estate, at any time during the settlement of my estate, to sell or to exchange for other property any part of my estate, real, personal or mixed, at such time or times, upon such terms and in such manner as he shall deem expedient, and to re-invest the proceeds of any such sale in other property, or to apply the same to the payment of my debts, as he shall deem expedient; and to sell or to exchange for other property any part of the property, real, personal or mixed, which I hold as surviving partner of my brother, W. H. Scovill."

In the second clause of the will the testator devised all

his estate to the same persons who would be entitled by law to receive the same if the testator had died intestate.

During the settlement of the estate the executor exercised the power conferred upon him by the will, and sold a part of the land belonging to the estate, and in the deed of conveyance gave the grantee the right to construct and maintain an underground sewer from the premises conveyed across a portion of the adjoining lands belonging to the estate. The sewer was constructed in accordance with the grant, and subsequently to the settlement of the estate the land, incumbered by the sewer, was conveyed to the defendant, and by him to the plaintiff, by warrantee deeds with covenants that the land was free from all incumbrances whatsoever, except a certain mortgage.

These are the principal facts, and upon them arises the question we are called upon to determine—whether the executor, in making a conveyance of a part of the estate, had authority by the will to incumber other lands which were not conveyed? This question depends upon another and that is, whether the power, conferred upon the executor by the will, is a mere naked power to sell the land, or a power coupled with an interest in the land? If it is of the former character, then all the authorities agree that the executor had no power to make the incumbrance in question. But if of the latter character, then the same authorities agree that he had such power. The case therefore turns upon the nature and character of the power conferred.

There is considerable diversity of opinion both in England and in this country in regard to what may constitute an interest in the land by implication, where power is given to the executor to sell, without any express words conferring upon him an interest in the land. But we are relieved from a discussion of the question, and from the necessity of going elsewhere for authority upon it, by the decision of our own court. In the case of *Bull* v. *Bull*, 3 Day, 384, a will, which was before the court for construction, contained the following paragraph: "I appoint my brothers, James Bull and

Thomas Bull, executors of this my last will and testament, with full power to sell and dispose of any and every part of the estate belonging to me, in such way and manner as they may judge most beneficial for the legatees." The court held that this gave only a naked power to sell the land, without any interest on the part of the executors in it. It will be observed that the power here conferred is in substance the same as the one in question. In the case of *Mansfield* v. *Mansfield*, 6 Conn., 559, Mrs. Mansfield, in consideration of certain indebtedness, gave to Messrs. Hitchcock and Ingersoll a power of attorney, the part of which important to the case is as follows: "And they, or either of them, are hereby authorized to sell and convey, by good and valid conveyance, in my name, all such lands, tenements and hereditaments as I now own, and also all such as I have or may have set to me as my dower in the real estate of my deceased husband; and, after paying themselves all dues and expenses, to account with me for the balance, if any, in their hands." The question to be determined by the court was, whether the power conferred by the instrument was revocable or not, and in considering the question the court use the following language, which is pertinent to the present inquiry: "As a general legal truth, it is indisputable that a naked power or authority is revocable at pleasure, and that a power or authority coupled with an interest is irrevocable. The inquiry before the court is, whether the power in question was coupled with an interest; and to decide correctly on this subject, it is necessary that we clearly understand what is the legal meaning of this expression. A naked power exists when authority is given to a stranger to dispose of an interest in which he had not before nor has by the instrument creating the power any estate whatever. But when power is given to a person, who derives under the instrument creating the power, or otherwise, a present or future interest in the subject over which the power is to be exercised, it is then a power coupled with an interest." The court then, after reviewing the authorities, proceeds thus: "On a construction of the instrument, according to the

form of its expressions, and the object of the parties, I see no ground for this position, that the power is coupled with an interest. It professes to have been executed in consideration of a preceding indebtedness; but I am not aware that this gives any aid in its construction. A power without consideration is equally valid as with one; and the expression means no more than that the indebtedness was the inducement in conferring the power in question. * * * They (Hitchcock and Ingersoll) however were authorized to sell and convey the estate mentioned in the power, in the name of the principal. It has been established law, from the days of Sir Edward Coke to the present time, that a power to sell and convey is a naked power. The only remaining clause supposed to confer an interest, declares that, after paying themselves all dues to them or either of them, and all expenses, the attorneys are to account for the residue. This expression has been supposed to show that the power created an interest in the estate to which it related, as security for the indebtedness before mentioned; but I am of a different opinion. The instrument contains no words of conveyance or of assignment; but is a simple power to sell, convey, and account." And so the court held that the power was simply a naked power, without any interest in the land. It will be perceived that the power in this case tended to show an interest in the land much more strongly than does the one in the case at bar.

In *Gregg* v. *Currier*, 26 N. Hamp., 200, it was held "that a devise of land to be sold by the executor, without words giving him the estate, only invests him with power of sale." The same doctrine was also held in *Dexter* v. *Sullivan*, 34 N. Hamp., 478. In *Snowhill* v. *Snowhill*, 3 Zabr., 441, it is said that "a mere direction to executors to sell land is a naked power, and gives them no estate or interest in the land whatever."

But it is said that in the case under consideration the executor is authorized to sell the property belonging to the estate, and apply the proceeds in payment of claims against the estate; and it is claimed that this makes the executor a

trustee of the property, which requires an interest in the land in order to execute the trust. But it appears in the case that there was a large amount of personal property belonging to the estate, much larger than was necessary for the payment of all claims against it. There was, therefore, no necessity to resort to the real estate for such purpose. And furthermore, the selling of the property was left with the executor wholly discretionary, and the direction to pay the debts was no more than the law required to be done without any direction.

In conclusion, we think that the power conferred upon the executor to sell the land in question was a mere naked power, without any interest in him in the premises sold to Rockwell, or in the adjoining premises, and that therefore he had no authority to create the incumbrance in question.

We advise the Superior Court to render judgment in favor of the defendant.

In this opinion the other judges concurred.